

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–602

| | |
|---|---|
| WATSON CHAPEL SCHOOL DISTRICT | **Opinion Delivered** February 10, 2016 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CV–2014–122–5] |
| V. | |
| JUNE VILCHES | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| APPELLEE | AFFIRMED |

## RITA W. GRUBER, Judge

Watson Chapel School District (the District) appeals from a circuit court's order awarding one of its junior–high teachers, June Vilches, back pay for a thirty–nine–day leave of absence. The District contends that the evidence was insufficient to support the award; the circuit court improperly shifted the burden of proof; and the court's award of attorney's fees was improper. We affirm the circuit court's order.

The incident giving rise to this case occurred on October 8, 2013, when Ms. Vilches noticed a student in the hall whom she did not recognize, and he was not wearing an identification card as required by school policy. Eyewitnesses to the event described the young man as between 6'2" and 6'5" tall and between 180 and 190 pounds; Ms. Vilches is about 5'1" and weighs 115 pounds. Ms. Vilches confronted him and requested his identification. He became angry and confrontational, called her a b★★★★, and began "cussing" her, so she decided to "write him up." Ms. Vilches testified that, at this point, he

pushed her into the wall by "charging" her, which he did two additional times. Several teachers heard the commotion and came out into the hall. Ms. Vilches testified that, when he pushed her into the wall, she could not speak and she hoped he was not going to hit her.

A male teacher, Clifton Lewis, eventually grabbed the student and escorted him away. Mr. Lewis testified that he did not see the student hit Ms. Vilches but that they were standing chest to chest and they were touching. He said that the student was "right in her face" and was "towering over her." He testified that the student was "real aggressive," was standing like boxers do before the prefight, and was trying to intimidate Ms. Vilches. He said that Ms. Vilches did not treat the student any differently than she treats other students and that she did not provoke him. The student just "flipped," and Ms. Vilches appeared upset by the incident.

Another teacher, Yvette Hammond, also witnessed the event. She testified that the student was aggressive toward Ms. Vilches, lunged forward while loudly threatening her, and briefly touched her. She said that Ms. Vilches was visibly shaken after the event.

Ms. Vilches testified that after three sleepless nights, nightmares, and headaches, she went to her doctor, Tracy Phillips, on October 11, 2013. Her blood pressure was high, which was unusual for her. Dr. Phillips diagnosed Ms. Vilches with posttraumatic stress disorder (PTSD) and advised her not to return to work "at this time." He told her to follow up with him in two weeks. He also prescribed medication for anxiety and a sleep aid.

Ms. Vilches returned to work on January 15, 2014. She did not return to see Dr. Phillips until February 3, 2014. Dr. Phillips testified that Ms. Vilches had been his patient

since 2001. He said that when she came in on October 11, 2013, she told him that she had been assaulted by a student at school. His notes reflected that she had a knot on her right arm, her blood pressure was elevated, her head and chest hurt, and she had blurred vision. Her blood pressure that day was 162 over 106, and her pulse measured 112. Ms. Vilches did not have a history of high blood pressure. He noted that she was "pretty shaken" and was not her "normal self." He diagnosed her with PTSD, which, he testified, can affect people in different ways. He said that, typically, he would schedule a follow-up exam to check on a patient after such a diagnosis. He said that his opinion "within a reasonable degree of medical certainty" was that it was appropriate for Ms. Vilches to be off work from October 11, 2013, through January 15, 2014, and that she "needed to be off work." On cross-examination, he admitted that he could not definitively say Ms. Vilches had symptoms of PTSD any time after October 11, 2013, when he met with her.

After she returned to work, Ms. Vilches sought payment from the District for the thirty-nine days she was off work pursuant to Ark. Code Ann. § 6-17-1209 (Supp. 2013). The District's superintendent refused her request, and the school board also voted to deny it. She filed a complaint on March 13, 2014, alleging that the District had violated Ark. Code Ann. § 6-17-1209 and had breached its employment contract with her by refusing to pay her for the thirty-nine-day leave of absence. She requested damages in the amount of the back pay for the thirty-nine-day leave and for her costs and attorney's fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999).

At the end of a bench trial, the circuit court ruled from the bench, finding that an

assault did take place, stating that it found the testimony of Ms. Vilches, Ms. Hammond, and Mr. Lewis credible. Without determining that Ms. Vilches was grabbed or pushed, the court found that she suffered personal injury as a result of the assault. The court credited Dr. Phillips's diagnosis of PTSD—noting that this type of injury had been recognized by our court in *Moore v. Pulaski County Special School District*, 73 Ark. App. 366, 43 S.W.3d 204 (2001), as a "personal injury" under the statute—and further considering Dr. Phillips's notes regarding Ms. Vilches's elevated blood pressure, painful chest and head, and blurred vision. Finally, the court noted that there was no medical testimony to suggest that Ms. Vilches had not been injured due to the assault. After announcing its findings, the court stated that the case was a "dual case" including a private statutory cause of action in addition to a breach-of-contract issue because section 6-17-1209 is "part of every teacher contract." Thus, the court stated that Ms. Vilches would be entitled to attorney's fees and costs and requested her to submit those in an itemized statement.

On April 28, 2015, the circuit court entered an order awarding Ms. Vilches damages for the thirty-nine-day absence, granting a setoff to the District for sick days for which she had been paid and ordering the sick days reinstated, and awarding her attorney's fees and costs. The order tracked the court's oral ruling, finding that Ms. Vilches had met her burden of proving that an assault had occurred against her in the course of her employment and that she had sustained a personal injury caused by the assault, noting Dr. Phillips's diagnosis of PTSD. The court then stated that the case was a private cause of action pursuant to Ark. Code Ann. § 6-17-1209 but awarded attorney's fees, stating that it was also a breach-of-

SLIP OPINION

contract case by virtue of the fact that the District was required to incorporate the statute into its written personnel policies. Taking into account the setoff, the court awarded damages in the amount of $6649.01 and attorney's fees of $9160.00.

A week after the order was entered, the District filed an objection to the request for attorney's fees, stating that the statement for legal services submitted by Ms. Vilches's counsel was excessive in light of the amount of damages received by Ms. Vilches; that none of the tasks reflected a one-tenth-hour entry; and that the requested hourly rate was not supported by evidence indicating that it was an appropriate rate. Ms. Vilches responded to the objection, but the court did not enter any additional orders. The District filed this appeal.

In bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a) (2015); *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, at 14, 381 S.W.3d 46, 55. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 361, 974 S.W.2d 464, 467 (1998).

For its first point on appeal, the District contends that Ms. Vilches did not provide sufficient proof to support her claim. Specifically, it argues that there must be more medical proof to support a personal-injury claim than an initial diagnosis of PTSD and a two-week-off-work slip. The District also argues that the PTSD diagnosis was based on a characterization of the event that wasn't true—that is, an incident in which Ms. Vilches was grabbed or punched. Before we address the District's argument, we turn to the relevant

statute:

> (a)(1)(A) Whenever a schoolteacher is absent from his or her duties in a public school as a result of personal injury caused by either an assault or a criminal act committed against the teacher in the course of his or her employment, the teacher shall be granted a leave of absence from school with full pay for up to one (1) year from the date of the injury.
>
> (B) Teachers who suffer personal injury while intervening in student fights, restraining a student, or protecting a student from harm shall be considered to be injured as a result of an assault or a criminal act.
>
> (2) The leave of absence for personal injury from an assault or a criminal act shall not be charged to the teacher's sick leave authorized under this subchapter.
>
> (b) The board of directors of each school district shall adopt written policies for the implementation of this section and incorporate them as part of the written personnel policies of the school district.

Ark. Code Ann. § 6-17-1209.

The relevant part of the statute provides that a schoolteacher who is absent from her duties "as a result of personal injury caused by either an assault or a criminal act committed against the teacher in the course of his or her employment" shall be granted a leave of absence from school with full pay. The statute does not define personal injury nor does it provide the type of proof required to prove such an injury. In *Moore*, we made clear that the injury does not need to be physical for the statute to apply and specifically affirmed an award for PTSD. *Moore*, 73 Ark. App. at 373, 43 S.W.3d at 209. Although there was evidence that the claimant in that case had been diagnosed with PTSD by a physician as a result of the incident, we also stated that the claimant's testimony—that she developed "hypertension that caused her to 'pass out,' in addition to depression, post-traumatic stress disorder, anxiety, and mental confusion"—constituted evidence to establish the injury: "Given appellant's evidence

6

of the effects that this incident had on her, we have no hesitation in holding that she sustained a personal injury within the meaning of section 6-17-1209." *Id*.

In this case, Dr. Phillips testified that he had diagnosed Ms. Vilches with PTSD as a result of the incident. Contrary to the District's argument, he did not state in his notes or in his testimony that the diagnosis was based on Ms. Vilches's having been either grabbed or pushed by the student. The diagnosis was based on her elevated blood pressure, the pain she described in her head and chest, her blurred vision, and the fact that she was not her "normal self." Moreover, the court heard all of the testimony, specifically did not find that Ms. Vilches had been grabbed or pushed, and found that she had been assaulted and suffered personal injury, PTSD, because of the assault. We do not make credibility findings in this court, and we hold that the circuit court's findings are not clearly erroneous.

For its next argument, the District claims that the circuit court improperly shifted the burden of proof to it to prove that Ms. Vilches could work. It bases this argument on the court's statement from the bench that there was "no other medical testimony from another doctor or medical-care provider to show that Ms. Vilches was not injured due to the assault" and its similar statement in its order that there was no "credible evidence" that she should have returned to work earlier than she did. First, the District did not raise this argument to the circuit court, and we generally do not address arguments raised for the first time on appeal. *Dixon v. State*, 2011 Ark. 450, at 16, 385 S.W.3d 164, 175. Furthermore, we do not view these statements by the court as "burden shifting." The court thoroughly reviewed the testimony, explained why it determined that Ms. Vilches had met her burden of proving that

7

she had suffered an assault and a personal injury caused by the assault, and observed that no evidence had been introduced to support the District's position.

Finally, the District contends on appeal that the circuit court erred in awarding attorney's fees. First, the District argues that this case was not a contract case but a statutory case, and thus fees are not recoverable under Ark. Code Ann. § 16-22-308, which authorizes fees in contract cases. Second, the District argues that fees were not requested by motion as required pursuant to Ark. R. Civ. P. 54(e). Finally, the District argues that the fees were excessive because they are greater than the amount awarded in damages to Ms. Vilches and that no evidence supports the hourly rate.

In her complaint, Ms. Vilches pleaded a statutory action and a breach–of–contract action and requested attorney's fees pursuant to Ark. Code Ann. § 16-22-308. After testimony was concluded at the trial, the circuit judge stated that the case was both a statutory and a contract case and asked Ms. Vilches to provide an itemized statement of her attorney's fees for recovery. This information is not in the record, but the statement was provided, the court awarded attorney's fees, and the District filed an objection to those fees. The District did not, however, object on the basis that the case was not primarily a contract case and thus that fees were not recoverable. It also did not object to the absence of a motion pursuant to Rule 54(e). Arguments not raised at trial will not be addressed for the first time on appeal, *Dixon*, 2011 Ark. 450, at 16, 385 S.W.3d at 175, and the basis for objection on appeal must be the same basis for objection as at the trial court level. *Threadgill v. State*, 347 Ark. 986, 990, 69 S.W.3d 423, 426 (2002).

The District did properly raise its objection to the amount of fees, however. A circuit court is not required to award attorney's fees and, because of the judge's intimate acquaintance with the trial proceedings and the quality of the service rendered by the prevailing party's counsel, the circuit judge has a superior perspective to determine whether to award fees. *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001). The decision to award attorney's fees and the amount to award is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its considerable discretion. *Harrill & Sutter, P.L.L.C. v. Kosin*, 2012 Ark. 385, at 9, 424 S.W.3d 272, 277. In this case, while the fees were greater than the damages awarded, the District has not provided any evidence that they are excessive in light of the work required to pursue and prosecute this case. Nor has it offered any evidence that the hourly rate charged is outside the normal range in the area for attorneys of the same experience. Consequently, we hold that the circuit court did not abuse its considerable discretion and affirm its decision.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Bridges, Young, Matthews & Drake PLC*, by: *Michael J. Dennis*, for appellant.

*Mitchell, Blackstock, Ivers, Sneddon & Marshall, PLLC*, by: *Greg Alagood*, for appellee.